

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

01 JAN 30 AM 10: 16

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| **TIM MYRICK, who sues through his mother and next friend, JANE MYRICK,** | ] ] ] ] | |
| Plaintiff(s), | ] ] | CV-99-N-0891-E |
| vs. | ] ] ] | |
| **SYLVESTER JAMES,** | ] ] | **ENTERED** |
| Defendant(s). | ] | JAN 30 2001 |

## Memorandum of Opinion

### I.   Introduction

In this action, properly before the court pursuant to 28 U.S.C. § 1331, the plaintiff, Tim Myrick ("Tim"), through his mother, Jane Myrick ("Mrs. Myrick"),[1] brings suit against Sylvester James ("James") in his individual capacity seeking redress pursuant to 42 U.S.C. § 1983 (§ 1983), and the laws of the State of Alabama. Specifically, Mrs. Myrick contends that Tim, a mentally and physically challenged individual, was attacked, battered, and sexually molested by James, a physical education teacher employed by the Alabama Institute for the Deaf and Blind ("AIDB"). This matter is presently before the court on James' motion for summary judgment, filed on October 31, 2000 (Doc. No. 49).[2] After careful

---

[1] Tim Myrick and Jane Myrick will also be referred to collectively as "plaintiffs."

[2] In a related matter, the court has for consideration defendant's motion to strike portions of the affidavit of Jane Myrick, taken on November 28, 2000 (Doc. No 58). The court will consider this matter contemporaneously with the motion for summary judgment and will disregard any portions of the affidavit not properly before the court on summary judgment.



consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that the motion for summary judgement is due to be **GRANTED**.

## II.   Statement of Facts[3]

The facts, as garnered from the affidavit and deposition testimony submitted by the parties but viewed in the light most favorable to the plaintiff, are as follows:

Tim Myrick is a twenty-two year old male with an IQ of twenty-five to thirty-five (severe range of mental retardation) and mental capabilities equivalent to those of a two and one-half year old child. (Def. Ex. 4). Tim has been diagnosed with Down's syndrome and is completely blind. (*Id.*). As a result of his mental and physical disabilities, Tim is extremely limited is his ability to communicate. For this reason, both parties agree that Tim cannot appreciate the nature of the oath to tell the truth which is administered prior to giving testimony. (Plf. Statement of Undisputed Facts at ¶ 5).

From roughly August of 1986 until May of 1995, Tim was a resident student at AIDB. (Def. Ex. 4). As a resident student, Tim attended special education classes during the day and, with the exception of weekends, stayed overnight in the school dormitory. (Def. Ex. 2, p. 283). On November 17, 1994, when Tim (seventeen years old at the time) returned home from school, Mrs. Myrick alleges that he "was acting differently than normal by being more withdrawn and not wanting anyone to touch him." (Plf. Ex. 1). While attempting to take Tim's shirt off in order to prepare him for his routine bath, Mrs. Myrick noticed "fresh"

---

[3] In developing the statement of facts in this opinion, the court considered the facts proposed by the parties and the court's own examination of the evidentiary record. These are the "facts" for purposes of this opinion only. They may not be the actual facts. *Cox v. Administrator United States Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994), *cert. denied, USX Corp. v. Cox*, 114 S. Ct. 900 (1995).

marks and abrasions on his back. (Def. Ex. 2, p. 187, Plf. Ex, 1). Mrs. Myrick called Sharon Gooden ("Gooden"), an AIDB employee, to inquire about the marks and abrasions. (Def. Ex. 2, p. 170). Gooden visited the Myrick's home that same evening and accompanied Tim and Mrs. Myrick to AIDB so that the school nurse could document Tim's injuries. (Plf. Ex. 1). Upon further inquiry, Gooden learned that marks were noticed on Tim's back as early as November 16, 1994. (Def. Ex. 5, p. 9). When Gooden questioned Tim about the marks, Tim responded that they were caused by "Shannon," a fellow AIDB student. (Def. Ex. 4, p. 113).

After returning home from the AIDB later that evening, Mrs. Myrick resumed her efforts to give Tim his evening bath. According to Mrs. Myrick, when she proceeded to remove Tim's clothes, particularly his pants and underpants, he became upset and repeatedly said "broke butt (to) pieces." (Def. Ex. 2, p. 211; Plf. Ex 1, p. 2). When Mrs. Myrick asked who "broke butt to pieces," Tim allegedly answered "Sly." (Def. Ex. 2, p. 211; Plf. Ex. 1, p. 2). Because "Sly" is Tim's name for defendant James, his physical education teacher at AIDB, Mrs. Myrick interpreted Tim's statements to mean James had sexually assaulted Tim. (Def. Ex. 2, p. 211; Plf. Ex. 1, p. 2). At all times during the 1994 school year, two teachers supervised the students during Tim's physical education class. (Def. Ex. 3).

On November 21, 1994, four days after noticing the marks on his back, Mrs. Myrick took Tim to a Dr. Richard Bliss for a re-check of his chest. (Def. Ex. 2, p. 235; Def. Ex. 4). Dr. Bliss documented, but did not extensively comment upon, the marks and abrasions on Tim's back. (Def. Ex. 4). In February of 1995, approximately three months after Tim's alleged "Sly" comment, Mrs. Myrick took Tim to Children's Hospital in Birmingham,

3

Alabama, for a minor surgical procedure unrelated to her suspicions that Tim had been sexually abused. (Def. Ex. 4, Plf. Ex. 3). While Tim was sedated, Dr. Earl W. Stradtman ("Dr. Stradtman") performed a complete body assessment. (*Id.*). Based on that assessment, Dr. Stradtman noted abrasions on Tim's rectum that were consistent with previous anal trauma and "category 3" suspicions for sexual abuse. (Plf. Ex. 3). In a follow up examination in June of 1995, Dr. Stradtman indicated that Tim's anal injury had "[c]lincally improved." (Def. Ex. 4).

In or around January 1995, several state agencies, including the State Attorney General's office, Department of Human Resources, Talladega County Sheriff's Department, and Talladega District Attorney's office either investigated or reviewed Mrs. Myrick's allegations, but ultimately declined to take any punitive action against James. (*Id.*) Indeed, while conceding the likelihood of anal penetration, the Attorney General's office concluded that "it would have been most difficult for a member of the school staff to have committed the offense." (*Id.*, statement of Robert E. Morrow, Dept. Attorney General). Tim remained in James' physical education class until February of 1995, and remained enrolled as an AIDB student until May of 1995. (Def. Ex. 2, p. 235). In January of 1998, during a second follow up visit with Dr. Stradtman, in response to Dr. Stradtman's question "who broke bottom apart?," Tim allegedly stated "Sly." (Plf. Ex. 3).

As a result of the sexual and physical abuse he allegedly sustained while an AIDB resident student, Tim Myrick, through his mother and next friend, Jane Myrick, brought the present action against AIDB and James, individually and in his official capacity, seeking damages premised on the torts of constitutional injury (as enforced by § 1983),

4

negligence/wantonness, false imprisonment, invasion of privacy, outrage, and conspiracy/collusion. (Complaint at ¶¶ 22-41). By Order dated August 4, 2000 (Doc. No. 16), this court dismissed all claims against AIDB, as well as all claims against James in his official capacity, on Eleventh Amendment immunity grounds. The only question remaining before the court, therefore, is whether plaintiffs raise a genuine issue of material fact with respect to their allegations against James in his individual capacity.

### III.   Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Id.* at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 746 n.11 (1983) (indicating the standard for summary judgment is

6

"[s]ubstantively . . . very close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989).

Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

**IV.   Discussion**

In his motion for summary judgment, James makes two separate, but interrelated arguments. First, from an evidentiary standpoint, James takes the following positions: (1) Tim, the only witness to the alleged abuse, should be disqualified from testifying because his severe mental deficiencies render him unable to comprehend the obligation to tell the truth, and (2) Tim's out of court statements, arguably identifying James as his assailant, are by definition hearsay and do not fall within one of the recognized exceptions to the rule

against hearsay. Second, James contends that, given the weight of the evidence presented in this case, no reasonable jury could conclude that he is responsible for the injuries/abuse Tim allegedly sustained. Each of James' contentions will be addressed in turn.

### A. Evidentiary Issues

#### 1. Tim's Competency as a Witness

As noted above, James takes the position that Tim should be precluded from testifying in this matter because his mental deficiencies render him unable to comprehend the obligation to tell the truth. In analyzing James' argument, the court necessarily begins with Rule 601 of the Federal Rules of Evidence, which provides "[e]very person is competent to be a witness except as otherwise provided in these rules." Fed. R. Evid. § 601. Rule 601, characterized by the Advisory Committee notes as a "general ground clearing" device, creates a presumption that all witnesses are competent to testify and any mental disability should go to the weight and credibility of the witness' testimony rather than to its exclusion. *Id.* (advisory committee notes); *see United States v. Roach*, 590 F.2d 181, 185 (5th Cir. 1979) (observing that "one effect of Rule 601 is to abolish mental capacity as a ground for rendering a person incompetent as a witness").

Notwithstanding this presumption of witness competency, however, unless the phrase "unless otherwise provided in these rules" is meant to be a hollow requirement, a federal court may, in the exercise of its sound discretion, disqualify a witness who is suffering from a mental deficiency of such magnitude that it renders him or her unable to understand the significance of the oath and to testify truthfully. *See* Fed. R. Evid. § 603 ("Before testifying, every witness shall be required to declare that the witness will testify

truthfully, by oath or affirmation administered in a form calculated to awaken the witness' conscience and impress the witness' mind with the duty to do so"). As stated by Judge Weinstein, because the "oath (or affirmation) requirement is a facet of competency," " if the witness is so young or so infirm that he or she cannot comprehend the nature of an oath or an affirmation as requiring him or her to tell the truth or face some type of serious consequence, the witness is incompetent." Jack B. Weinstein & Margaret A. Berger, WEINSTEIN'S FEDERAL EVIDENCE § 603.04 at 603-9 (2000); *see United States v. Fowler*, 605 F.2d 181, 185 (5th Cir. 1979), *cert. denied* 445 U.S. 950 (1980) (district court did not err in refusing to allow defendant to testify after he refused to swear or affirm to tell the truth); *see also United States v. Gutman*, 725 F.2d 417, 420 (7th Cir. 1984) ("Although insanity as such is no longer a ground for disqualifying a witness, *see* Fed. R. Evid. 601, a district judge has the power, and in an appropriate case the duty, to hold a hearing to determine whether a witness should not be allowed to testify because insanity has made him incapable of testifying in a competent fashion").

  Inasmuch as counsel for plaintiffs has conceded, in his responsive submission, that Tim is unable to comprehend the obligation to tell the truth, the court finds it unnecessary to dwell upon this particular issue. It suffices to say that, given his extremely low IQ and incomprehensible speech, the court is convinced that James has carried his burden of establishing that Tim is not competent to testify as a witness in the present action. In reaching this conclusion, the court has thoroughly considered the medical and

psychological evidence of record, Tim's video taped deposition[4] and the undisputed facts as proffered by the parties.

### 2.  **Admissibility of Hearsay Statements**

Having concluded that Tim is not competent to testify, the court next turns to the question of whether the statements Tim allegedly made to his mother and physician are properly admissible over James' hearsay objections and, if so, whether those statements are sufficient to create a genuine issue for purposes of summary judgment. At the outset, the court notes the precarious position in which plaintiffs' counsel finds himself. On the one hand, counsel has conceded that Tim is unable to understand the oath and to testify truthfully while, on the other hand, counsel maintains that Tim's statements possess the particularized guarantees of trustworthiness necessary for gaining admission pursuant to certain exceptions to the rule against hearsay. While the court declines to hold that one's inability to understand the oath is a *per se* bar against the admission of his or her hearsay statements into evidence, *see Idaho v. Wright*, 497 U.S. 805, 824 (1990), it is certainly a factor the court should take into consideration. *Id.* at 825. With this in mind, the court turns to plaintiffs' contention that the exceptions to hearsay provided in Rule 803(1) [presence sense impression], Rule 803(2) [Excited Utterance], Rule 803(4) [statements made for purposes of medical diagnosis/treatment], and Rule 803(24) [residual "catch all"] are broad enough to encompass Tim's out of court statements.

---

[4] The court notes that, in his video taped deposition, Tim failed to respond to the court reporter's attempts to administer the oath. Thereafter, during the course of the deposition, Tim either failed to respond or answered "No" to defense counsel's inquires into whether he could tell the truth or understood the obligation to tell the truth. (Def. Ex. 1, pp. 9-12, 15, 19-20, 22, 24-26, 28, 30-32, 45).

### a.   **Statements Made to Tim's Physician**

Mrs. Myrick argues that Tim's 1998 response of "Sly" to Dr. Stradtman's question "who broke bottom" should be excepted from hearsay pursuant to Federal Rule 803(4). Federal Rule 803(4) excepts from the hearsay rule "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Fed. R. Evid. 803(4). Therefore, in order to gain admission under Rule 803(4), an out of court statement must satisfy the following requirements.

First of all, the statement must be one upon which medical personnel reasonably rely in diagnosis and treatment. *See United States v. Iron Shell*, 633 F.2d 77, 84 (8th Cir. 1980), *cert. denied*, 450 U.S. 1001 (1981). Significantly, while statements of "fault" are ordinarily inadmissible under the present exception, a majority of courts have concluded that, in child abuse cases, a statement of the identity of the perpetrator is admissible so long as the statement is reasonably pertinent to diagnosis or treatment, e.g., where the perpetrator is a member of the child's immediate family. *See United States v. Yazzie*, 59 F.3d 807, 812-814 (9th Cir. 1995) (affirming admission of statements made by child abuse victim's mother, inculpating defendant-stepfather, where mother's demeanor and request for help ensured that statements were properly motivated); *see also United States v. De Noyer*, 811 F.2d 436, 438 (8th Cir. 1987) (holding out of court statements of five year old child, identifying father as perpetrator of sexual abuse, were reasonably pertinent to treatment) (*citing United States v. Renville*, 779 F.2d 430, 439 (8th Cir. 1985). Second, assuming the statement is one

11

upon which medical personnel reasonably rely, the court must ascertain whether the patient's motivation for making the statement is consistent with the rule's purpose. *See Territory of Guam v. Ignacio*, 10 F.3d 608, 612 (9th Cir. 1993) (stating the "rationale for the exception is that the patient can be expected to tell the truth about her injury because she will want to be diagnosed correctly and treated appropriately"); *see also United States v. Barrett*, 8 F.3d 1296 (8th Cir. 1993) (child victim's statements admissible if it can be shown the child understood physician's role, thus demonstrating child's motivation to provide truthful information). As discussed below, Tim's statement to Dr. Stradtman falls far short of qualifying for admission under this exception.

Both parties agree that Tim's low IQ places him the severe range of mental retardation and, as a result, he is unable to comprehend the obligation to tell the truth. For this reason, with respect to the "motive" requirement, the court would be hard pressed to find that Tim understood Dr. Stradtman's role as physician, and was motivated by a desire for proper diagnosis and treatment, when he responded "Sly" to Dr. Stradtman's "who broke bottom" question. Additionally, even if Tim's motivation could be correctly ascertained, given that the statement was made roughly three years after the alleged abuse and two and one-half years after he was removed as a student from AIDB, its difficult to imagine how the identification of James would be reasonably pertinent to Tim's treatment. As James points out, given the references to impending civil suits in Dr. Stradtman's medical report, it could be argued that Tim's statement is more relevant to the present litigation than to his proper diagnosis and treatment. Accordingly, the court concludes that Tim's statement to Dr. Stradtman is not admissible under Federal Rule 803(4).

### b. Statements Made to Tim's Mother

Mrs. Myrick also contends that Tim's November 17, 1994, statement that "Sly" "broke butt (to) pieces" should be excepted from hearsay pursuant to rules 803(1), 803(2), or 807 of the Federal Rules of Evidence. Apparently recognizing that Tim's statement will not easily satisfy the criteria of any particular exception to hearsay, Mrs. Myrick points out that federal courts have been increasingly open to liberalizing their traditional application of the hearsay exceptions in order to accommodate the admission of highly probative out of court statements in child abuse cases. *See Ignacio*, 10 F.3d at 612; *see also Doe v. United States*, 976 F.2d 1071, 1074 n.1 (7th Cir. 1992). As explained in *Doe*, due to the lack of witnesses, the difficulty in obtaining corroborative evidence and the reluctance or inability of young victims to testify against their alleged perpetrators, the child's out of court statements are oftentimes the only proof that a crime has occurred. *Id.* at 1074. Fortunately, in deciding the present motion, the court can pass on Mrs. Myrick's request to test the elasticity of the exceptions to hearsay. As described below, even assuming Tim's statement qualifies for admission pursuant to one of the aforementioned exceptions, that one statement, standing alone, is simply insufficient to withstand James' summary judgment motion.

### B. Sufficiency of Evidence

As stated at the outset, James takes the position that, given the weight of evidence presented in this case, no reasonable jury could return a verdict in plaintiffs' favor. In support of this position, James correctly notes that the standard for the non-moving party is the standard of "substantial evidence." *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969). Additionally, James cites this court to the Eleventh Circuit case of *Michigan Abrasive*

13

*Co. v. Poole*, 805 F.2d 1001, 1004 (11th Cir. 1986), providing that, in considering whether a non-moving party has presented "substantial evidence," the district court should:

> consider all of the evidence - not just that evidence which supports the nonmover's case - but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes reasonable men could not arrive at a contrary verdict, granting of motions is proper. . . . A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n.o.v. should not be decided by which side has the better case, nor should they be granted only where there is a complete absence of probative facts to support a jury verdict.

*Id*.

In support of his contention that plaintiffs have failed to carry their burden, James has proffered the following evidence. In or around January of 1995, in response to Mrs. Myrick's concerns, several state agencies, including the State Attorney General's office, Department of Human Resources, Talladega County Sheriff's Department, and Talladega District Attorney's office either investigated or reviewed allegations of sexual molestation on AIDB grounds, but declined to take any criminal action against James. In declining to take punitive action, the Attorney General's office relied, in part, upon the following investigative findings: (1) the marks and abrasions on Tim's back could have been accidental and were consistent with a child's hand; (2) during the five years preceding the investigation, there were fifteen documented instances of AIDB students attempting to carry out sexual conduct with their classmates (one such incident involved Tim); (3) the activities of AIDB students are "micro managed" by staff members making it "extremely difficult for any unwanted activity to easily occur;" (4) based on teacher and staff interviews, physical education

14

("PE"), taught by defendant James, remained Tim's favorite class even after the alleged assault; (5) during James' PE class, three staff members were, at all times, with the students; (6) a psychologist working in concert with the AG investigation observed that Tim appeared comfortable and at ease in the school environment; in fact, the psychologist noted that Tim only became agitated ("moaning," "crying," and "whining") when questioned in his family's bathroom; and (7) when asked by the AG investigator "Did Sly hurt you?" Tim responded "No." (Def. Ex. 4). The Attorney General's office ultimately concluded that, while evidence of anal penetration existed, "it would have been most difficult for a member of the school staff to have committed the offense." (Def. Ex. 4).

In addition to the investigative records noted above, James cites various additional evidence in an attempt to demonstrate that plaintiffs' claims are completely implausible. For instance, although Tim consistently failed to identify James as his alleged assailant during his numerous interviews with state agency officials as well as during his recent deposition, just hours after the marks and abrasions on his back were discovered, Tim identified "Shannon," a fellow classmate at AIDB, as the person who caused his injuries. (Def. Ex. 2, p. 170). Similarly, because Tim was not examined by a physician until roughly three months after the incident allegedly occurred, there is absolutely no physical evidence connecting James (or anyone else) to the purported abuse. James also points out that, at the time of the alleged assault, Tim was completely blind. Despite this obvious impediment to making a positive identification, James argues the plaintiffs have proffered absolutely no evidence tending to establish how Tim identified James as his assailant. Finally, James contends that Mrs. Myrick's credibility is weakened by the fact that, while adamantly

claiming the statement "broke butt (to) pieces" should be interpreted to suggest Tim was sexually abused by James, she allowed Tim to remain a resident student at AIDB until May of 1995 and a student in James' physical education class until February of 1995 (when he was removed at James' request), despite the fact she lived only a few miles from the school. According to James, even assuming Tim used the phrase "broke butt (to) pieces" in November of 1994, evidence has yet to surface tending to show what Tim meant or implied when the statement was made.

In response to James' contentions, and in support of their argument that a genuine issue exists for trial, plaintiffs offer the following November 16, 1994, colloquy:

> **Tim:**        "broke butt (to) pieces"
>
> **J. Myrick:**  "who broke butt to pieces?"
>
> **Tim:**        "Sly"

(Plf. Ex. 1, p. 2). Assuming the above statement could surmount James' hearsay objection, it is simply insufficient to create a genuine issue of material fact with respect to the essential element of causation. As previously stated, Tim, the only individual with potential first hand knowledge necessary to contradict James' version of events cannot, and does not intend to, testify in the present matter. After a thorough investigation, conducted or participated in by four state agencies, neither a single witness nor a single shred of physical evidence has been identified tending to suggest that James is responsible for the abuses plaintiffs allege. Instead, a full six years after the alleged incident occurred, plaintiffs have been able to produce only one ambiguous out of court statement in support of their claims. For this reason, the court is compelled to conclude that the "facts and inferences point so strongly

and overwhelmingly in favor of . . . [James] that reasonable men could not arrive at a contrary verdict." See *Poole*, 805 F.2d at 1004.

The court is sympathetic to the dilemma in which Mrs. Myrick finds herself and readily acknowledges that the person responsible for the injuries to her child may now go unpunished. Moreover, the strong interest of society generally in identifying and bringing to justice those who injure children for no better reason than self gratification cannot be questioned. But it is also essential that innocent persons not be falsely accused and made to pay for the acts of others. It is only by identifying and punishing the persons who are responsible that such conduct will be discouraged.

The court does not know who molested Tim and, sadly, neither do the plaintiffs. It is, however, the plaintiffs' burden ultimately to prove that the person they have accused is the person responsible for Tim's injuries. On summary judgment, they must at the very least produce sufficient evidence to create a genuine issue of material fact on all the essential elements of their claim. Here, one essential element is that they identify the person who committed the wrongful act. They have failed to carry their burden here. Mr. James is entitled to judgment as a matter of law.

## V.   Conclusion

Upon a thorough review of the parties' submissions, the court concludes that plaintiffs have failed to produce substantial evidence in support of their claims. Accordingly, defendant's motion for summary judgment will be **GRANTED** by an appropriate order in conformity with this opinion.

Done, this **29th** of January, 2001.

_____
EDWIN NELSON
UNITED STATES DISTRICT JUDGE